

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

## No. 02-25-00317-CR

———————————————

CHRISTOPHER ROBERT KELLEY, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1746581

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

Appellant Christopher Robert Kelley appeals his arson conviction and fifteen year prison sentence, raising two issues. Both of Kelley's appellate issues pertain to the deadly weapon findings that the trial court made. In his first issue, Kelley argues that we should abate his appeal and remand the case to the trial court to make findings of fact about whether the State and Kelley had negotiated the waiver of the deadly weapon findings. In his second issue, he argues that insufficient evidence supports the trial court's deadly weapon findings. Because the record reveals no error in the trial court's affirmative deadly weapon findings, and because it would be improper to abate this appeal and remand it back to the trial court, we affirm the trial court's judgment.

## I. INTRODUCTION

In 2023, Kelley was charged with a single count of arson, allegedly committed in 2021. The indictment alleged that Kelley "did intentionally start a fire or cause an explosion by igniting a flammable or combustible material or liquid with an open flame or other ignition source, with the intent to damage or destroy a vehicle knowing said vehicle was within the limits of an incorporated city or town, or was located on property belonging to another." [Capitalization altered.] The indictment also alleged that Kelley had used two different deadly weapons—fire and "a combustible or

2

flammable liquid or material"[1] [Capitalization altered.]—or, alternatively, that he was a party to the offense and knew that a deadly weapon would be used or exhibited. *See* Tex. Code Crim. Proc. art. 42A.054(b) (providing statutory language used in indictment's deadly weapon allegation).

In January 2025, Kelley pleaded guilty to the arson charge. As part of his judicial confession, Kelley averred that "[a]ny . . . deadly[ ]weapon allegation in the charging instrument, other than those waived or dismissed by the attorney representing the [S]tate, are true and correct." A presentence investigation (PSI) report was prepared, and at a hearing in August 2025, after receiving the PSI report and other evidence and hearing the arguments of counsel, the trial court found Kelley guilty and sentenced him to fifteen years in prison. The trial court also found the deadly weapon allegations to be true. This appeal followed.

## II. BACKGROUND

Viewed in a light most favorable to the trial court's judgment, *see Hill v. State*, No. 02-16-00306-CR, 2018 WL 2248466, at *2 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) ("In our due-process review of the sufficiency of the evidence to support a deadly[ ]weapon finding, we view all of the evidence in the light most favorable to the judgment . . . ."), the evidence at Kelley's sentencing hearing showed the following. One day in

---

[1]For simplicity's sake, we will refer to this material as an "accelerant."

3

September 2021, Kelley and a companion were at a restaurant when Kelley decided to insert himself into a conversation he had overheard among other patrons at the restaurant. Kelley and his companion got into a heated dispute with the group,[2] and the manager-on-duty asked them to leave the restaurant because of the trouble they were causing. Kelley was "quite upset" and "particularly angry"; he drove back to the restaurant later that day and waited in his vehicle outside the restaurant until he observed the group he had confronted earlier leave. He tried to follow them to their house, but he lost them.

That night, Kelley used social media to locate the couple's address and drove to their house. He had decided to get revenge by setting fire to their vehicle.

When he got to the house, Kelley immediately recognized their vehicle, which was parked in the driveway. He grabbed a bottle of a flammable solution he had mixed himself, got out of his car, lit the bottle, and tossed it under the rear driver's side of the vehicle. He initially walked away, only to return a few minutes later because his attempt at setting the fire did not "take." After his second attempt was successful, Kelley got back into his car and drove away.

Following a 911 call, firefighters were dispatched to the crime scene. The husband told investigators at the scene that, after the altercation at the restaurant, he had received a short but threatening and profanity-laced voicemail from a telephone

---

[2]It appears from the record that the group of patrons Kelley confronted consisted of a husband and wife and another unidentified male.

number he had not recognized. The investigators subsequently discovered that Kelley had conducted a search for the wife by name on Facebook approximately twenty minutes before leaving the voicemail on the husband's telephone on the night of the offense.

After a months-long investigation, Kelley was arrested. In the course of their investigation, police learned that Kelley was on probation out of Pulaski County, Arkansas, for the 2016 offense of criminal attempt to commit arson.

## III. DISCUSSION

## A. Kelley's First Issue: Abatement would be improper here.

In his first issue, Kelley argues that "it is necessary for the Court to remand the case to the trial court so findings of fact can be made as to whether the State waived seeking a deadly weapon finding in exchange for [Kelley]'s waivers[,] including the right to appeal."[3] He contends that "the plea documents and its handwritten

---

[3]The waivers that Kelley signed as part of his guilty plea include the statement, "I waive all rights of appeal in this case." However, that same day, the trial court signed a form certifying that this case "is not a plea[ ]bargain case, and [Kelley] has the right of appeal." And, at the sentencing hearing months later, the trial court told Kelley, "You have the right to appeal this decision to the Second Court of Appeals. . . . You must file that notice of appeal within 30 days of today's date. We will appoint counsel if you cannot afford one for the purposes of the appeal." Thus, despite the apparent discrepancy in the record, we hold that whether this was a plea bargain case or not, the trial court sufficiently evinced its intent to give Kelley permission to appeal its judgment, and we therefore have jurisdiction over this case. *See* Tex. R. App. P. 25.2(a)(2)(B) ("In a plea bargain case—that is, a case in which a defendant's plea was guilty . . . and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—defendant may appeal only . . . after getting the trial court's permission to appeal."); *see also* Tex. Code

5

notations suggest the State agreed to waive the deadly weapon finding in exchange for Kelley's guilty plea, waiver of jury trial, and waiver of the right to appeal." He directs our attention to (1) a line in the plea admonishments he received stating, "<u>SPECIAL FINDINGS AND ENHANCEMENTS</u>: N/A" and (2) an apparently handwritten note in the margin next to his judicial confession that states, "State said N/A on page one to special findings & enhancements."

But as Kelley also points out, after sentencing him, the trial court asked the State, "[T]here is no deadly weapon finding on this matter, correct?" and the State responded that it "did not waive the deadly weapon finding. There is a deadly weapon finding on the indictment."[4] The trial court then made an affirmative deadly weapon finding on the record, and its judgment indicates that both deadly weapon allegations in this case were found true.

"Because the record lacks clarity on whether a negotiated plea agreement existed," Kelley requests that we "abate the appeal and remand for the trial court to

---

Crim. Proc. art. 44.02 (providing that "before the defendant who has been convicted upon either his plea of guilty . . . before the court and the court, upon the election of the defendant, assesses punishment . . . may prosecute his appeal, he must have permission of the trial court"); *Qualls v. State*, No. 02-24-00403-CR, 2025 WL 2458617, at *1 n.2 (Tex. App.—Fort Worth Aug. 26, 2025, no pet.) (mem. op., not designated for publication) (stating that "accurate appeal certifications are critical to our jurisdiction" and concluding, in a charge-bargain case, that the trial court had impliedly meant to certify that it had given the defendant permission to appeal where the trial court told the defendant, "You have a right to appeal the trial," and instructed him on how to perfect an appeal).

[4]Kelley did not object to the State's statement.

6

make findings clarifying the parties' understanding at the time of the plea." The State agrees that abatement is appropriate. We do not.

In support of their shared request that we abate this appeal and remand the case back to the trial court to make fact findings, both Kelley and the State cite Texas Rule of Appellate Procedure 44.4, which provides:

> A court of appeals must not affirm or reverse a judgment or dismiss an appeal if:
>
> (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeals; and
>
> (2) the trial court can correct its action or failure to act.

Tex. R. App. P. 44.4(a). If the circumstances described in Rule 44.4(a) exist, then we "must direct the trial court to correct the error" and "will then proceed as if the erroneous action or failure to act had not occurred." Tex. R. App. P. 44.4(b).

But this rule is inapplicable here, for the simple reason that the only "erroneous action or failure or refusal to act" that Kelley or the State can point to is (1) the trial court's allegedly erroneous deadly weapon finding, (2) the State's purportedly erroneous representation at the sentencing hearing that the deadly weapon allegation had not been waived, or (3) Kelley's trial counsel's failure or refusal to speak up when the State made its representation to the trial court. The latter two are not actions by the trial court, and the first has not "prevent[ed] the proper presentation of [this] case

7

to the court of appeals,"[5] as required to trigger Rule 44.4(a)'s conditional mandate. *See* Tex. R. App. P. 44.4(a)(1). As one of our sister courts has explained, "Abatement under Rule 44.4 is proper only when the trial court refuses to allow an appellant to take the steps necessary to preserve error, thus preventing him from properly presenting his case to the appellate court." *Saenz v. State*, No. 08-12-00344-CR, 2014 WL 4251011, at *7 (Tex. App.—El Paso Aug. 26, 2014, no pet.) (not designated for publication). An error that does not prevent an appellant from developing the record for the appellate court's review "is not remediable under Rule 44.4." *Id.*

Further, the requested abatement would be inappropriate in the situation presented here, where it would essentially invite the trial court to receive new evidence in order to make the requested findings. *See Thomson v. State*, 727 S.W.3d 200, 206 n.9 (Tex. Crim. App. 2025) ("[T]he claims of error on appeal must be confined to the trial record as 'properly presented' to the appellate courts. . . . Otherwise, appellate review would hold trial courts accountable for mistakes it had no fair opportunity or power to correct." (citing Tex. R. App. P. 44.4(a)(1))). In such a situation, "[n]ew facts may be offered into the record via habeas after the trial court has lost its plenary power." *See id.*; *see also Farris v. State*, 712 S.W.2d 512, 516 & n.3 (Tex. Crim. App. 1986) (holding that "new evidence . . . should not be used to supplement the appellate

---

[5]Quite the contrary, Kelley was able to thoroughly brief his evidentiary-sufficiency challenge to the trial court's deadly weapon findings in his second issue.

8

record in the instant case" and noting, "Appellant, however, still has a remedy through a post-conviction writ of habeas corpus. Although some time delay may result therefrom, our rules do not allow insertion of such new evidence into the appellate review process."). Accordingly, although the State joins Kelley's request for an abatement,[6] we must refuse it.[7] We overrule Kelley's first issue.

---

[6]Kelley timely filed a motion for new trial but did not complain therein about the deadly weapon findings. To the extent that there was a misunderstanding to which the State was willing to concede error, Kelley could have raised this issue in his motion for new trial.

[7]The only authority Kelley cites in support of his contention that "[t]he trial court should be authorized to determine whether, at the time the plea was entered, both the State and [Kelley] understood that a deadly weapon finding would be waived in consideration of [Kelley]'s open plea of guilty" is an unpublished abatement order by one of our sister courts. *See Allen v. State*, No. 07-06-0211-CR, 2007 WL 188637, at *1 (Tex. App.—Amarillo Jan. 25, 2007, order) (per curiam) (not designated for publication), *disp. on merits*, 2007 WL 613842, at *1 (Tex. App.—Amarillo Feb. 28, 2007, no pet.) (not designated for publication). But the situation in that case was very different from the issue presented here. In *Allen*, the appellant had requested that the appeal be abated "to determine whether a final judgment ha[d] been entered." *Id.* The court of appeals stated that it was "unable to discern if the [trial court's] notation [on correspondence from the appellant] evince[d] an intent to render a final, appealable order denying [the appellant] relief or whether it [wa]s simply an indication that the trial court did and w[ould] not act on the [appellant's] request," so it abated the appeal and remanded the cause to the trial court with directions to "determine whether a final order has been entered in the cause and, if so, identify that order." *Id.* The trial court in *Allen* did not have to receive new evidence not already in the record to determine whether it had entered a final, appealable order. When "only the trial court is in the position to know [what ruling] was intended," an appellate court must "abate the matter to the trial court so that the trial court c[an] clarify which action was intended." *Henery v. State*, 364 S.W.3d 915, 919 (Tex. Crim. App. 2012). *Allen* is thus distinguishable.

9

**B. Kelley's Second Issue: The evidence is sufficient to support the deadly weapon findings.**

In his second issue, Kelley argues that "there is insufficient evidence to support the deadly weapon finding[s]."[8] The State counters that the evidence is sufficient to support the trial court's findings, arguing that Kelley "set fire to a vehicle using an accelerant in a residential area at night." Here, we agree with the State.

Under the Texas Penal Code, a deadly weapon is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury[] or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17). To sustain a deadly weapon finding, the evidence must show that (1) the object meets the definition of a deadly weapon; (2) the deadly weapon was used or exhibited during the transaction on which the felony conviction was based; and (3) other people were put in actual danger. *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). The statute does not require that the actor actually intend to cause death or serious bodily injury, *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017), but "there must be

---

[8]Although the trial court's judgment contains two separate deadly weapon findings—apparently one for each deadly weapon allegation in the indictment—Kelley refers to the "deadly weapon finding" (singular, not plural) throughout his brief and does not expressly argue that the evidence is insufficient to support the finding that the accelerant he used was a deadly weapon. But because we construe Kelley's brief liberally, *see* Tex. R. App. P. 38.9, and because the evidence supporting both deadly weapon findings is so interrelated, we will review the sufficiency of the evidence to support both deadly weapon findings.

evidence that others were actually endangered, not 'merely a hypothetical potential for danger if others had been present,'" *Cates v. State*, 102 S.W.3d 735, 738 & n.8 (Tex. Crim. App. 2003) (quoting *Mann v. State,* 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd,* 58 S.W.3d 132 (Tex. Crim. App. 2001)). We view all of the evidence in the light most favorable to the judgment to determine whether any rational factfinder could have found beyond a reasonable doubt that the fire was used or exhibited as a deadly weapon.[9] *See Brister*, 449 S.W.3d at 493; *Cates*, 102 S.W.3d at 738; *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (sufficiency standard).

In *Pruett v. State*, the Court of Criminal Appeals held that when evidence "demonstrates that someone ignites combustible material to intentionally burn down a house in a residential neighborhood, a deadly[ ]weapon finding may appropriately attach to the arson conviction when the fire is capable of causing death or serious bodily injury." 510 S.W.3d 925, 929 (Tex. Crim. App. 2017). The only difference between this holding and the facts of Kelley's case is that Kelley set fire to a vehicle, not a house. Kelley acknowledges *Pruett* and concedes that "[u]nder the broadest reading of *Pruett*, the admission . . . of guilt to setting a vehicle ablaze intending to destroy or damage it would concede to the use of fire as a deadly weapon." But he contends that such an interpretation "would conflict with [Section 1.07(a)(17)] and

---

[9]A deadly weapon finding affects a convicted felon's parole eligibility, among other things. *See Moore*, 520 S.W.3d at 908.

case law[,] which hold that only a firearm is a deadly weapon per se." He submits that "no case, including *Pruett*, has held that fire is a deadly weapon *per se*."

We agree with Kelley only to the extent that fire is not a deadly weapon per se because it is not "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." *See* Tex. Penal Code § 1.07(a)(17)(A). Thus, to support the deadly weapon findings in this case, the evidence must show that the fire Kelley started was, in the manner of its use or intended use, "capable of causing death or serious bodily injury." *See id.* § 1.07(a)(17)(B). Critically, to justify a deadly weapon finding under Section 1.07(a)(17)(B), "the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury[,] only that 'the manner' in which it was either used or intended to be used was '*capable*' of causing death or serious bodily injury." *Moore*, 520 S.W.3d at 908 (internal citation omitted).

Kelley claims that his "plea of guilty to arson was not by itself sufficient to show the car fire was capable of causing serious bodily injury or death." But we need not rely only on Kelley's guilty plea in our evidentiary-sufficiency review; other evidence was admitted at the hearing.

Video footage from a surveillance camera showed Kelley lighting the car on fire and then running away from the scene, leaving the fire unattended. The spot where Kelley lit the fire was about one foot from the victims' lawn, and the fire could have spread quickly. Another video, taken with a cell phone, showed the car engulfed in

12

flames with several persons—not just the victims—in close proximity. One of the individuals can be heard saying on the video that the fire was lit "right at the gas tank." Seconds later, a loud blast can be heard, with another loud blast about a minute later. Kelley admitted that he not only lit the fire but that he used an accelerant. *See Pruett*, 510 S.W.3d at 929 ("This fire was dangerous because it was left unattended and because [the] appellant used an accelerant. As a result, the fire endangered . . . the lives of neighbors who could have been killed or seriously injured if the fire continued to spread.").

Like the fire in *Pruett*, "the deadly nature of the fire [in this case] is not difficult to appreciate. Fire is inherently dangerous[,] and it is capable of inflicting serious bodily harm, especially when it is intentionally started in a residential neighborhood." *Id.* "The fire also posed a danger from both the heat effects and the emissions of toxic chemicals." *Id.* We are constrained to reach the same conclusion that the Court of Criminal Appeals did in *Pruett*: "In this case, the State adequately demonstrated that the fire that [the] appellant started was capable of causing death or serious bodily injury." *Id.*

Kelley quotes language from the court's opinion in *Brister*—namely, that "sufficiency of the evidence is dependent upon the specific testimony in the record about the manner of use," 449 S.W.3d at 494—and argues that this means "there must be specific testimony that this fire was capable of causing death or serious bodily injury." He cites *Pruett* and other cases in which fire was found to be a deadly weapon

13

where witnesses testified about the fires. *See Meza v. Stephens*, No. 3:15-CV-0337, 2018 WL 2388577, at *7 (S.D. Tex. May 25, 2018); *Pruett*, 530 S.W.3d at 926-27; *Stanton v. State*, No. 06-19-00008-CR, 2019 WL 5700249, at *3 (Tex. App.—Texarkana Nov. 5, 2019, no pet.) (mem. op., not designated for publication); *Mims v. State*, 335 S.W.3d 247, 249 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). He asserts that because "there was no explanatory testimony from any witness, lay or expert, showing that the fire [he started] was capable of causing death or serious bodily injury[,] . . . a reasonable person could only speculate, theorize[,] or guess that this fire was capable of causing death or serious bodily injury."

We reject Kelley's argument because "evidentiary sufficiency should be measured against what the evidence *does* show, not what it does *not*." *Gabriel v. State*, 900 S.W.2d 721, 726 (Tex. Crim. App. 1995) (Clinton, J., concurring) (citing *Chambers v. State*, 711 S.W.2d 240 (Tex. Crim. App. 1986)). We do not read *Brister* as holding that specific testimony by a sworn witness that a fire (or an accelerant) was capable of causing death or serious bodily injury is essential to sustain the findings that the fire and accelerant were each a deadly weapon. Here, the trial court had before it evidence that Kelley had (1) lit a car on fire (2) using an accelerant (3) near the car's gas tank (4) in close proximity to grass (5) in a residential neighborhood (6) where multiple people were present and (7) left the fire, which soon combusted the gas tank and engulfed the entire car, unattended. The trial court could have credited the eyewitness accounts of the fire as captured on the cell phone video. *See* Tex. R. Evid.

14

802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay.").[10] We hold that this evidence established that the fire and accelerant each met the definition of a deadly weapon, that the fire and accelerant were used or exhibited during the transaction on which Kelley's arson conviction was based, and that other people were put in actual danger. The evidence is therefore legally sufficient to sustain the trial court's deadly weapon findings. *See Brister*, 449 S.W.3d at 494; *see also Pruett*, 510 S.W.3d at 929.

Because the evidence is legally sufficient to sustain the deadly weapon findings, we overrule Kelley's second issue.

## IV. CONCLUSION

Having overruled both of Kelley's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 6, 2026

---

[10]We do not hold that any particular statements in the cell phone video were inadmissible hearsay. But under the rule, even if any of the statements about the fire *were* inadmissible hearsay, that did not rob the statements of their probative value because Kelley did not object to them. *See* Tex. R. Evid. 802.

15